**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JORGE ROJAS,** on behalf of himself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**TAX RELIEF HELPERS, INC.**<br><br>*Defendant*. | Case No. 1:24-cv-05166<br><br>Hon. Elaine Bucklo |

**PLAINTIFF'S MOTION TO COMPEL RESPONSES TO DISCOVERY
INCLUDING THE PRODUCTION OF CALLING DATA
<u>NECESSARY FOR CLASS CERTIFICATION</u>**

Following an extension, Tax Relief Helpers, Inc. ("Defendant") provided responses to discovery on November 11, 2024. *See* <u>Exhibit 1</u>. However, despite acknowledging the need to produce documents during the meet and confer and claiming that they would have such documents by January 9, 2025, no documents have been produced in discovery by the Defendant. This motion to compel follows that meet and confers and counsel for the Defendant acknowledging that they didn't have an explanation for why the responses weren't provided. The only way to ensure that the documents will be received now is through a Court Order.

Furthermore, given the fact that this information is necessary to conduct an expert analysis, the Plaintiff is also moving to compel a complete response to Request for Production ("RFP") No. 19:

> Please produce all documents containing any of the following information for each outbound telemarketing call sent by you or your vendors on any lead generation or customer acquisition campaigns, including, but not limited, to the campaign that contacted the Plaintiff…
>     a) the date and time;
>     b) the caller ID;
>     c) any recorded message used;
>     d) the result;

1

      e) identifying information for the recipient; and
      f) any other information stored by the call detail records.

The information sought through RFP No. 19 is highly relevant to the numerosity, commonality, and typicality requirements of Rule 23(a), and to the predominance requirement of Rule 23(b). Moreover, the sought-after discovery is relevant to determining class damages. Similarly, the Plaintiff is also moving to compel records of any purported consent they have to make the calls (which the Defendant has previously indicated there are none, but not updated their responses to reflect such) as well as records of prior complaints that they have received.

## Background and Overview

As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020). The Plaintiff alleges that Tac Relief Helpers, Inc. made unsolicited pre-recorded telemarketing calls to their cellular telephone numbers.

Plaintiff's telephone number is (312) 627-XXXX, which is assigned to a telephone service that is charged per the call. *See* ECF No. 1 at ¶¶ 14-15. Despite that, Defendant made pre-recorded telemarketing calls to the Plaintiff on at least June 18, 2024 (twice). *Id.* at ¶ 18. All of the calls followed the same pre-recorded telemarketing script. *Id.* at ¶ 19. They started with a pre-recorded message inquiring with the "National Tax Assistance Group" and permitted the caller to "press 1" to receive a call back. *Id.* at ¶ 20. On the final call, the Plaintiff pressed 1 to

2

receive a call back. *Id.* at ¶ 22. He spoke with "Don Moss" who offered the Defendant's tax relief services. *Id.* at ¶ 23. Mr. Moss then sent a text message to the Plaintiff that said "Don Moss Tax Relief Helpers 214-281-8577." *Id.* at ¶ 24.

### Meet and Confer Efforts and Following the Meet and Confer the Defendant Commits to Produce Documents But Fails to Do So

The Plaintiff's meet and confer efforts included multiple attempts to reach counsel for the Defendant following the November 11, 2024 responses. This culminated in a telephone call on November 19, 2024, where counsel had the following written exchange following the call:

> On Tue, Nov 19, 2024 at 7:20 AM Anthony Paronich <anthony@paronichlaw.com> wrote:
> Hello, Kevin. Thanks for chatting with me, my notes are below:
>
> - For Interrogatory No. 6 and 7, documents evidencing consent should be produced and the consent request is not limited to the Plaintiff. This appears to be a central issue in the case since the Defendant claims they only make calls with consent, but the Plaintiff disputes providing the Defendant consent and received multiple pre-recorded calls from the Defendant. **If they claim to have consent to make pre-recorded calls, then they should produce that.**
> - We'd like to confer regarding the response to RPD No. 5, which is relevant to damages and also identifies putative class members. **We can narrow down to requests for Do Not Call, complaints related to the TCPA or pre-recorded messages. Please let us know.**
> - For RPD No. 15, while its possible these calls were not made by Manish Damania and Shiftastik International Pvt. Ltd., the records of outbound calls made during the putative class period are necessary to identify putative class members. **We need records of all outbound calls during the four year class period. To start, we'd limit those to pre-recorded calls and determine the scope if other call records are needed.**

*See* Exhibit 2. In response, counsel for the Defendant indicated that they would review. *Id.* A month later, counsel for the Defendant sent the following update: "Agreed, and I know you've been patient here. We're working through RFP Nos. 5 & 15; there doesn't appear to be any evidence of consent (Rogs Nos. 6&7). I'm available to speak anytime tomorrow after 11 am pst, except between 2-2:30 pm pst." *Id.*

3

Counsel for the parties then had a call, and following the call counsel for the Plaintiff sent the following e-mail, "Hello, Kevin. Thanks for the call. As I mentioned, we must receive records of the outbound calls by 12/31 since there is no dispute as to their relevance. If not, we will file a motion and seek costs under Fed. R. Civ. P. 37(c)(5)." *Id.* To which counsel for the Defendant responded, "Anthony, I'm told my client is working to obtain these call records, but needs another week. Can you give them one more week? **If they don't have them by then, go ahead and file your motion**." *Id.* (emphasis added).

Counsel for the Plaintiff agreed and sent the following:

> Hello, Kevin (and happy New Year). We'll hold off on the filing of the motion to compel until January 9, 2025 assuming the following occurs:
>
> 1. We receive the records of all outbound pre-recorded calls during the class period.
> 2. We receive an amended discovery response regarding the lack of consent
> 3. We receive all pre-recorded complaints as previously discussed.

Counsel for the Defendant's response: "Appreciate the courtesy, thanks.". *Id.* However, nothing was produced and now the Plaintiff is left with this motion.

**Legal Standard**

Rule 26(b)(1) provides, in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *United States v. Haddox*, No. 2:08-CV-208PPSPRC, 2009 WL 3586957, at *2 (N.D. Ind. Oct. 27, 2009). Rather, "relevancy is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *United States v. Autumn Ridge Condo. Ass'n, Inc.*, 265 F.R.D. 323, 326 (N.D. Ind. 2009).

Rule 37 permits a party to request an order from the Court compelling discovery. *Id*. "When the discovery sought appears relevant, the party opposing the discovery bears the burden of proof to establish the discovery's lack of relevance by demonstrating that it is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Jones v. Hamilton Cnty. Sheriff's Dept.*, No. IP 02-0808-C-H/K, 2003 WL 21383332, at *3 (S.D. Ind. June 12, 2003).

**Argument**

**I. The Defendant Must Finish its Document Production.**

There is no dispute that the Plaintiff has sought what Tax Relief Helpers must (and already has) conceded is some relevant information with these requests. As such, the Plaintiff is simply attempting to secure the documents that the Defendant will produce. Responses to interrogatories and requests for production are due within 30 days after service. *See* Fed. R. Civ. P. 33(b)(2); Fed. R. Civ. P. 34(a)(2). When a party fails to make disclosures within 30 days, or fails to cooperate in discovery, the party seeking discovery "may move for an order compelling an answer." Fed. R. Civ. P. 37(a)(3)(B); *see also Hartford Accident & Indem. Co., Prop. & Cas. Ins. of Hartford v. Greater Lakes Ambulatory Surgery Ctr., LLC*, Case No. 18-13579, 2023 U.S. Dist. LEXIS 234814, *5 (E.D. Mi. Dec. 6, 2023). Here, the Plaintiff is, in the first instance, attempting to obtain documents that Tax Relief Helpers concedes are relevant and that it stated it

5

would produce. Tax Relief Helpers cannot state it will produce documents then never produce them and ignore numerous follow-up requests asking when documents will be produced. This is a clear violation of Federal Rule of Civil Procedure 34, which requires Tax Relief Helpers to either produce the documents with its response or within "another reasonable time specified in the response." Fed. R. Civ. P. 34(b)(2)(B).

**II.    The Call Records Plaintiff seeks are highly relevant to contested elements of Rule 23 and damages**

The Call Records Plaintiff seeks are highly relevant to the numerosity, commonality, typicality, and predominance elements of Rule 23, the calculation of class-wide damages, and to at least six of Defendant's affirmative defenses.

As an initial matter, where defendants contest elements of Rule 23 in proposed class actions under the TCPA, courts routinely require the production of information necessary to support those requirements. *See, e.g.*, *Cahill v. GC Servs. Ltd. P'ship*, No. 3:17-cv-01308-GPCMDD, 2018 WL 1791910, at *4 (S.D. Cal. Apr. 16, 2018) ("RFPs 10-13 and 18 are relevant at least to the issues of numerosity and commonality. The lists are reasonably calculated to identify the number of recipients of calls made during the class period, which is crucial to determine whether the class is so numerous to make joinder impracticable. The call lists are also relevant to the commonality requirement under Rule 23(a), for which plaintiff must show the class 'suffered the same injury ... such that the ... class claims will share common questions of law or fact" with those of the named plaintiffs.'"); *Mbazomo v. ETourandTravel, Inc.*, No. 2:16-CV-02229-SB, 2017 WL 2346981, at *5 (E.D. Cal. May 30, 2017) (compelling the production of call data because "the Court agrees with the weight of authority on this matter that call logs and dialing lists are relevant to the commonality prong of the class certification inquiry. The requested list would also be relevant to

Plaintiff's need to show numerosity.") (internal citation omitted). As the Northern District of Illinois has explained:

> Moreover, the information plaintiff seeks in the contested first and second requests for production is clearly relevant to class discovery; specifically, to the issues of numerosity, commonality, and typicality. As explained above, plaintiff proposes a class of persons who received faxed advertisements without a proper opt out notice, with whom Quill did not have an EBR, and from whom Quill did not have prior express permission or invitation to send such faxes (Compl. at ¶ 20). Plaintiff's requests seek, for example, copies of all faxed advertising documents, documents showing express permission or invitation to receive such faxes, and documents indicating an EBR with the recipients of the facsimiles.
>
> ***As we made clear to Quill in multiple court hearings, the Court cannot permit Quill on one hand to contest class certification and on the other hand deny plaintiff the discovery relevant to its position that a class should be certified***.

*Whiteamire Clinic, P.A. v. Quill Corp.*, No. 12 C 5490, 2013 WL 5348377, at *3 (N.D. Ill. Sept. 24, 2013) (emphasis added); *see also Central Alarm Signal, Inc. v. Business Fin. Servs., Inc.*, No. 14-14166, 2016 WL 3595627, at *2 (E.D. Mich. July 5, 2016) (granting motion to compel in putative TCPA class action, in part, because "the Court cannot permit [Defendant] on the one hand to contest class certification and on the other hand deny plaintiff the discovery relevant to its position that a class should be certified.") (quoting *Whiteamire Clinic, P.A.*, 2013 WL 5348377, at *3); *Ossola v. Am. Express Co.*, No. 13 C 4836, 2015 WL 5158712, at *7 (N.D. Ill. Sept. 3, 2015) ("Call data is relevant, and thus produced as standard practice . . . in cases where the defendant is the alleged dialer.").

In the same vein, "[o]utbound dial lists are relevant to establish the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a) and are therefore discoverable." *Thomas v. Fin. Corp. of Am.*, No. 3:19-CV-152-E, 2019 WL 5157022, at *1 (N.D. Tex. Oct. 10, 2019) (compelling the production of similar data sought here); *Doherty v. Comenity Capital Bank & Comenity Bank*, No. 16CV1321-H-BGS, 2017 WL 1885677, at *4 (S.D. Cal. May 9, 2017)

("The Court finds that outbound dial lists are relevant to establish the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a) and are therefore discoverable.").

Not surprising, then, is that courts across the country, including in this circuit, routinely compel TCPA class action defendants to provide analogous information relevant to the sizes of proposed classes. As the Northern District of Indiana has also explained:

> When certifying a class, the Court must find numerosity, commonality, typicality, and predominance. Fed. R. Civ. P. 23. Considering Federal Rule 23's threshold requirements, precertification discovery is appropriate to determine whether a class can be properly certified, and discovery should be sufficiently broad to allow a putative class plaintiff, like Mr. Fralish, a chance to meet these requirements.
>
> \*   \*   \*
>
> Nevertheless, courts in class-action TCPA cases have consistently held that information regarding plaintiffs and putative class members who were called by a defendant or by others on a defendant's behalf, such as outbound call lists and the number of calls made to those recipients are relevant to the numerosity and commonality requirements listed in Rule 23. . . . Although the requested information here is not precisely a call list, it does seek to quantify the number of calls and is therefore analogous to the outbound call lists that have been found relevant to the numerosity and commonality requirements. Thus, the requested text message-related information is relevant to class certification in a way that is analogous to the relevance of call logs in these other TCPA class actions. Moreover, text messages are analogous to phone calls in other TCPA cases such that the text data requested through ROGs 7–16 and RFPs 7–14, 17, 19, 34–35 is relevant to the Rule 23 numerosity and commonality requirements for class certification applicable in this case.
>
> \*   \*   \*
>
> As Digital has not shown the point at which the burden of producing this discovery outweighs its benefits, Digital has not met its burden and its undue burden objections are overruled.
>
> For the foregoing reasons, Mr. Fralish is entitled to the class related data he seeks through Interrogatories 7–16 and RFPs 7–14, 17, 19, 34–35.

*Fralish v. Digital Media Sols., Inc.*, No. 3:21-cv-00045-JD-MGG, 2021 WL 5370104, at \*9-10 (N.D. Ind. Nov. 17, 2021) (compelling the production of class data in a putative TCPA class action) (internal citations and quotations omitted); *accord Fralish v. Deliver Tech., LLC*, No. 3:20-CV-

8

00353-DRL-MGG, 2021 WL 3285528, at *9 (N.D. Ind. Aug. 2, 2021) ("For the foregoing reasons, Plaintiff is entitled to the class related data he seeks through RFPs 7-14 & 33, and ROGs 9-15.").

Also analogous, a Court in the Eastern District of Pennsylvania has held in a TCPA case while compelling the same data:

> Frey has shown that the outbound call list is relevant to class certification and to the merits of his claim. *See, e.g.*, *Gossett v. CMRE Fin. Servs.*, 142 F.Supp.3d 1083, 1087 (S.D. Cal. 2015) ("This court finds that the outbound call lists are relevant to the class claims and meritorious claims and defenses in this case and overrules [the defendant's] objections to the requests."). The call records can be used to determine which calls were made to cell phone numbers, a fact that is relevant to the numerosity and typicality requirements of Rule 23(a). *See Thrasher v. CMRE Fin. Servs., Inc.*, No. 14-cv-1540, 2015 WL 1138469 at *2 (S.D. Cal. March 13, 2015) ("The court finds that the outbound call list is reasonably calculated to identify the number and recipients of calls made during the class period, which is relevant to Rule 23 requirements."). (*See* Doc. No. 36 at p. 12 (defining the putative class as all individuals to whom Frontier or its vendor made a non-emergency telephone call "to a cellular telephone number or to a number where the recipient is charged for the call").) It is also relevant to the question of liability and damages under the TCPA. *See* 47 U.S.C. § 227(b)(1)(A)(3) (prohibiting calls "using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . ."); *id.* § 227(b)(3)(B) (creating a private right of action to recover "for actual monetary loss" caused by a violation of the TCPA or "to receive $500 in damages for each such violation").
>
> EAG argues that Frey is not entitled to this personal identifying information pre-class certification, but, as discussed below, the Court did not bifurcate the discovery period in this matter. As such, Frey was required to seek discovery on both his individual claim and his class claim at the same time and could not wait until after the Court ruled on his motion for class certification to request this relevant information.

*Frey v. Frontier Utils. Ne. Llc*, No. 19-2372-KSM, 2020 U.S. Dist. LEXIS 260620 *5-6 (E.D. Pa. Apr. 13, 2020). For the same reasons in *Frey*, the motion to compel should be granted here. As the Plaintiff mentioned above, there is a single discovery period. As one court summarized when granting a motion to compel for the calling records in a TCPA case:

> This information will assist Plaintiff's experts in determining which phone numbers were tied to cellular phones, which calls were for telemarketing purposes, which numbers were on the National Do Not Call Registry

9

("NDNCR") and which calls were made using an automatic telephone dialing system ("ATDS"). The information is therefore relevant to the numerosity, commonality, and typicality inquiries the Court will undertake to decide Plaintiff's motion for class certification under Rule 23.

*See Mey v. Frontier Commc'ns Corp.*, No. 13-cv-01191-MPS, ECF No. 102 (D. Conn. Dec. 5, 2014). Here, like *Mey*, the Plaintiff, or his expert, will determine which calls qualify for membership in the class in order to prepare this case for class certification. Because the sought-after Call Records are plainly relevant to contested elements of Rule 23, including numerosity, this Court should compel their production.

Separately, Call Records where call recipients informed Defendant that it is calling the wrong number are relevant to class-wide damages. Pertinent here, a TCPA plaintiff may bring "an action to recover for actual monetary loss from [a violation of the TCPA], or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B). Defendant is therefore liable for no less than $500 in damages for each of its violations of the TCPA. *See Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1167 (S.D. Ind. 1997) ("§ 227(b)(3)(B) . . . provides for a minimum penalty of [$]500 for each violation of the TCPA").

Because courts calculate damages under the TCPA based on the number of violations—in this case, the number of telemarketing calls delivered to class members during the class period—discovery is highly relevant to damages suffered by absent class members. For this additional reason, the Call Records Plaintiff seeks—which he will use to identify potential class members—are highly relevant and this Court should compel their production.

**III.    If the Defendant Possesses Evidence of Consent to Make the Pre-Recorded Calls, it Must Produce it.**

A telemarketer who claims it had consent to contact a particular consumer bears the burden of proof, and must maintain records that prove such a claim. The FCC has cautioned that

10

a telemarketer claiming consent "must be prepared to provide clear and convincing evidence of the existence of such a relationship." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* FCC 03-153 at ¶112, -- FCC Rcd. --, 2003 WL 2157853, 2003 FCC LEXIS 3673 (July 3, 2003) (emphasis added). The FCC has also noted: In the event a complaint is filed, the burden of proof [as to whether prior express consent was obtained] rests on the sender to demonstrate that permission was given. We strongly suggest that senders take steps to promptly document that they received such permission. *Id.* at ¶46.

The case law has made this clear, including in the Seventh Circuit Court of Appeals. *See Rosales v. Heath,* No. 8:17CV87, 2019 U.S. Dist. LEXIS 225294, at *9 (D. Neb. June 27, 2019) ("The FCC ruled that 'if any question arises as to whether prior express consent was provided by a call recipient, the burden is on the *caller* to prove that it obtained the necessary prior express consent." Consistent with that burden, all circuit courts deciding the question of whether consent is part of a prima-facia TCPA case or an affirmative defense have concluded that consent is an affirmative defense. *See Latner v. Mount Sinai Health Sys., Inc.*, 879 F.3d 52, 54 (2nd Cir. 2018); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017); *Blow v. Bijora*, 855 F.3d 793, 803 (7th Cir. 2017); *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1115 (11th Cir. 2014)."). As another has held in this District when compelling similar information:

> If defendant cannot substantiate this defense with documents or information responsive to the interrogatory, it should say so under verification and withdraw that defense.

*Martin v. Bureau of Collection Recovery*, No. 10 C 7725, 2011 WL 2311869, at *1 (N.D. Ill. June 13, 2011). As such, the Plaintiff has a legitimate need for this information and a reasonable expectation that it be produced.

Indeed, Tax Relief appear to agree that it should be produced, but has made the claim in an e-mail that no consent info is likely to exist. *See* Exhibit 2. If that's the case, then Tax Relief should provide a discovery response saying so.

**IV.     Defendant Should be Ordered to Produce Records of the Other Complaints it has Received.**

In addition, the requests are also relevant to a damages analysis. The TCPA also allows for a damages award to be increased, up to treble damages, if the violation is found to be "knowing or willful." 47 U.S.C. § 227(b)(3)). Here, the Plaintiff seeks similar information which has previously been compelled in other TCPA lawsuits.

There is also no meaningful dispute that this information may possibly be introduced at trial. In fact, the Fourth Circuit Court of Appeals affirmed a jury verdict holding a defendant vicariously liable and subject to willful damages under the TCPA following a 5-day trial. *Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643 (4th Cir. 2019), *cert. denied*, 2019 U.S. LEXIS 7573 (Dec. 16, 2019). In that lawsuit, the defendant's history of receiving prior complaints, their responses to those complaints and settlements of such lawsuits were all issues considered by the jury. *Id.* at 662 (4th Cir. 2019) ("The court documented the many occasions on which Dish noted SSN's noncompliance and failed to act. The trial court catalogued the lawsuits and enforcement actions brought against Dish for telemarketing activities, none of which prompted the company to seriously improve its business practices…When it learned of SSN's noncompliance, Dish repeatedly looked the other way…The district court also noted the half-hearted way in which Dish responded to consumer complaints, finding that the evidence shows that Dish cared about stopping complaints, not about achieving TCPA compliance.")

As there is no meaningful dispute that it is possible that the exact evidence that the Plaintiff seeks could be put into evidence at trial and as a result, the information sought is discoverable. Indeed, granting a similar motion to compel in a TCPA case, another Court held:

> Defendant's argument that the information need not be produced because it is not admissible under Federal Rule of Evidence 404(b) is without merit. *See* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). Thus, the Motion will be granted.

*Bratcher v. Navient Sols., Inc.,* No. 3:16-cv-519-J-20JBT, 2017 U.S. Dist. LEXIS 35015, at *6-7 (M.D. Fla. Mar. 2, 2017).

Much like the other requests at issue in this motion, Tax Relief has seeming agreed to provide this information (albeit subject to a reasonable limitation), but simply hasn't done so. A response must be compelled.

**V.  Given the Fact that Tax Relief Helpers has Repeatedly Promised to Provide Records and Failed to Do so, Costs Pursuant to Fed. R. Civ. P. 37(a) are Appropriate.**

Under Rule 37(a)(4), a party is entitled to recover expenses incurred in seeking an order compelling discovery unless the opposition was substantially justified or other circumstances make an award of expenses unjust. *United States v. Kemper Money Market Fund, Inc.,* 781 F.2d 1268, 1279 (7th Cir. 1986). Such an award is appropriate here, as Tax Relief Helpers has repeatedly committed to producing documents that it just failed to do over a 2-month period. There has been no justification provided and the Defendant has missed multiple deadlines to provide the information, including ones it imposed on itself.

**Conclusion**

The Plaintiff's motion to compel should be granted.

Dated: January 13, 2025 /s/ *Anthony I. Paronich*
Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com

*Counsel for Plaintiff and the proposed class*

14