UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JORGE ROJAS, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>TAX RELIEF HELPERS, INC.,<br><br>    Defendant. | Case No. 1:24-cv-05166<br><br>Honorable Laura K. McNally |

### **DEFENDANT TAX RELIEF HELPERS, INC.'s RESPONSE TO PLAINTIFF's MOTION TO COMPEL**

On February 7, 2025, Defendant Tax Relief Helpers, Inc. ("TRH" or "Defendant") produced over 1,300 call recordings to Plaintiff. And although TRH does not dispute that its production should have been made by January 9, 2025, there is a legitimate reason for its delay.

As explained below, TRH—a California-based company that offers tax and debt-relief services—has never disputed that it placed a call to Plaintiff's phone. Plaintiff, however, alleges that TRH left *prerecorded* voicemails on his phone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* (the "TCPA"). *See generally* Plf.'s Compl. (ECF 1). Yet, as TRH explained in its discovery responses, it "has no record whatsoever of leaving a prerecorded voicemail message on Plaintiff's telephone before he initially contacted [TRH]." *See* TRH's Discovery Responses (ECF 9–1 at PageID # 60).

That context is important: TRH's discovery responses were framed around the fact that it does not make *prerecorded*, as opposed to regular outbound, calls. *See id.* at PageID # 56–60 (explaining that (i) its customer service representatives make phone calls to existing or prospective clients who request to be contacted, (ii) it "does not hire vendors to make outbound calls," (iii)

1

Plaintiff initiated contact with TRH in or around May 2024, requesting that TRH call him to discuss its services, and (iv) no "third party made the calls alleged in the complaint.").

However, it wasn't until January 28, 2025 when TRH discovered that:

1. a third-party with whom it has no contractual relationship—a Wyoming-based company called SAS² - Smart Automation Systems ("SAS")—apparently made a number of prerecorded calls, without TRH's prior knowledge;

2. SAS sold leads that were generated from those calls to another third party named "James Schwindt"—again, without TRH's prior knowledge; and

3. TRH then purchased some of those leads from James Schwindt.

Ultimately, and at least from TRH's perspective, this case will turn on whether TRH is vicariously liable for SAS's prerecorded calls. *See, e.g., Warciak v. Subway Restaurants*, 949 F.3d 354, 357 (7th Cir. 2020) ("In order to be held vicariously liable under the TCPA, an agent must have express or apparent authority."); *Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 937–38 (7th Cir. 2016) (applying agency principles to determine whether the defendant was vicariously liable for faxes sent in violation of the TCPA).[1]

---

[1] Of course, TRH maintains it is not liable for SAS's prerecorded calls because (i) SAS was not TRH's agent, nor did it purport to be, and (ii) there were no red flags to justify any finding that TRH knew or should have known that any of these leads were bad leads. *See Kristensen v. Credit Payment Services, Inc.*, 879 F.3d 1010, 1014–15 (9th Cir. 2018) ("Under these settled principles, the district court did not err in concluding that [Plaintiff] failed to raise a genuine issue of material fact as to whether Credit Payment Services, Pioneer Services, Enova, or LeadPile ratified AC Referral's unlawful text messaging. It is undisputed that AC Referral did not enter into a contract with any of the lenders or with LeadPile. It is also undisputed that AC Referral did not communicate with or even know of the lenders or LeadPile before the lawsuit was filed. Because AC Referral was neither an agent nor a purported agent of the lenders or LeadPile, AC Referral's actions do not qualify as ratifiable acts. Accordingly, the lenders and LeadPile cannot be held vicariously liable for AC Referral's unlawful text messages under a ratification theory.").

For now, though, TRH (i) already produced over 1,300 call recordings to Plaintiff (which it obtained when it purchased certain leads from James Schwindt), (ii) produced to Plaintiff the evidence it has to substantiate that SAS made these calls, and (iii) is currently amending its discovery responses to accurately reflect what actually happened here.

Finally, given these circumstances, TRH respectfully maintains that sanctions are not warranted. That TRH had no relationship with—and didn't even know about—SAS only compounded the confusion surrounding these calls. Yet, as soon as TRH discovered what happened, it shared its evidence (and 1,300 call recordings) with Plaintiff.

DATED: February 7, 2025　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　**TAX RELIEF HELPERS, INC.**

By:　　*/s/ Kevin J. Cole*
　　　　Kevin J. Cole, Esq. (kevin@kjclawgroup.com)
　　　　**KJC LAW GROUP, A.P.C.**
　　　　20 N. Clark Street, Suite 3300
　　　　Chicago, Illinois 60602
　　　　Telephone: (310) 861-7797

　　　　*Attorneys for Defendant*
　　　　*Tax Relief Helpers, Inc.*

3

**CERTIFICATE OF SERVICE**

I, Kevin J. Cole, an attorney, certify that I electronically filed the foregoing **DEFENDANT TAX RELIEF HELPERS, INC.'s RESPONSE TO PLAINTIFF's MOTION TO COMPEL** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties of record on this 7th day of February, 2025.

By: */s/ Kevin J. Cole*
Kevin J. Cole, Esq. (kevin@kjclawgroup.com)
**KJC LAW GROUP, A.P.C.**