UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JORGE ROJAS, on behalf of himself and all others similarly situated,<br><br>　　Plaintiff,<br><br>v.<br><br>TAX RELIEF HELPERS, INC.,<br><br>　　Defendant. | Case No. 1:24-cv-05166<br><br>Honorable Elaine E. Bucklo |

### DEFENDANT'S RULE 19 MOTION FOR JOINDER

Defendant Tax Relief Helpers, Inc. ("TRH"), by and through its counsel, hereby moves for an order under Federal Rule of Civil Procedure 19 compelling the joinder of non-parties James Schwindt and $SAS^2$ – Smart Automation Systems, and states as follows:

### BACKGROUND

Plaintiff Jorge Rojas ("Mr. Rojas") filed this TCPA class action against TRH on June 21, 2024. *See generally* ECF No. 1. Mr. Rojas generally alleges that TRH "made unsolicited pre-recorded telemarketing calls to their cellular telephone numbers and other telephone numbers charged per call." *Id*. at ¶ 2. Specifically, Mr. Rojas alleges he received two prerecorded telemarketing calls on June 18, 2024. *Id*. at ¶ 18. TRH filed its answer on August 25, 2024. ECF No. 5.

TRH denies that it made the prerecorded calls at issue in Mr. Rojas's complaint, and instead, it is TRH's position that Mr. Rojas contacted TRH wishing to speak about TRH's tax services. ECF No. 22-1 at 15, PageID # 116. In fact, TRH has no record of leaving a prerecorded voicemail message on Mr. Rojas's telephone prior to Mr. Rojas directly contacting TRH. *Id*. Rather, TRH recently discovered (as of January 28, 2025), that $SAS^2$ – Smart Automation Systems

1

("SAS") made the prerecorded calls to Mr. Rojas. *Id*. at 8, PageID # 109. The calls to Mr. Rojas were made without TRH's prior knowledge or consent. *Id*. TRH does not have a contractual relationship with SAS. *Id*. TRH understands that SAS made the calls for the purpose of generating business leads.

Following SAS's prerecorded calls, SAS sold the leads to an individual, James Schwindt ("Mr. Schwindt"), again without TRH's prior knowledge. *Id*. Mr. Schwindt is a "lead generator," which is a person who finds potential customers for businesses. TRH purchased some of those leads from Mr. Schwindt where Mr. Schwindt had identified those leads as potential clients who may need tax or debt-relief services. *Id*.

TRH does not have a formal contract with Mr. Schwindt and TRH has never spoken with SAS or anybody acting on behalf of SAS. *Id*. At the time TRH purchased the leads from Mr. Schwindt, TRH had no indication that SAS had not obtained Mr. Rojas's or anyone else's consent to receive solicitation telephone calls. *Id*. at 11, PageID # 112.

During the investigation of this case, Mr. Schwindt produced an email to TRH an that was supposedly sent to TRH from SAS. *Id*. at 13, PageID # 114. However, TRH has no record of the email. *Id*. And as demonstrated in the image below, the "email" produced by Mr. Schwindt is a screenshot of unsent draft email. *Id.*



To whom it may concern,

I apologize for the delay in our investigation but due to the extensive amount of time that has passed, it has been difficult to find information about the call. We have determined that the number is a landline and not listed in the Federal DNC. The client made outbound calls based on opt ins received from our vendor so surely this number opted in at some point. As the opt in only gives us permission to call for 60 days, we were not in the habit of saving these for over 6 months. We have put in a request with our provider to search their database but we're now looking at probably 8 months since the caller opted in.

We have confirmed that the number called in 3 times on May 31, 2024 and again on June 6, 2024. The caller seemed to have expressed interest in 2 different services with 2 different companies during those calls.

It is our understanding that this phone number user is expressing dissatisfaction with a call received on May 28, 2024. We can confirm that the voicemail provided is a voicemail that was used by our call center last May in their vicidial system. It's strange that the message was left as they were no longer using the voicemail service. Their system worked by connecting outbound calls to live agents and often a call that connects to voicemail would also reach an agent. The agent had the option to triggering the voicemail service to leave the voicemail identified in the complaint.

This is not a normal practice and we're not aware of any other complaints regarding this so it's likely an isolated occurrence. We have since disabled this option from the call center. We sincerely apologize for the disturbance caused and can assure this won't happen again. We understand that our agreement provides that we would not be sending you calls for numbers listed in a state or federal DNC list and that no robocalling technology would be used so we are prepared to indemnify you the $500 provided for by the TCPA as this was definitely a mistake and not intentional.

Best regards,



- David Salazar
- Chief Information Officer
- Calle 78 # 52 – 05, Bogota D.C.
- +1 (949) 543-1196
- sas2.co

**IMPORTANT INFORMATION:** This email is intended only for the person(s) named in the message header. This message (including any attachments) may contain confidential, proprietary, privileged and/or private information exempt from disclosure under applicable law. The information is intended to be for the use of the individual or entity designated above. If you are not the intended recipient of this message, please notify the sender immediately, and delete the message and any attachments. Any disclosure, reproduction, distribution or other use of this message or any attachments by an individual or entity other than the intended recipient is prohibited.

## ARGUMENT

Schwindt and SAS should be joined to this action as necessary parties. Federal Rule of Civil Procedure 19(a) requires joinder if (1) the court cannot accord complete relief to existing parties in the party's absence; (2) the absent party's ability to protect an interest relating to the subject of the action will be impaired; or (3) an existing party would be subject to a substantial risk of multiple or inconsistent obligations if the absent party is not joined. *See Askew v. Sheriff of*

*Cook. Cnty., Ill.*, 568 F.3d 632, 635 (7th Cir. 2009); Fed. R. Civ. P. 19(a). Ultimately, "[t]he purpose of Rule 19 is to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Askew*, 568 F.3d at 634 (cleaned up).

"The Rule 19 analysis proceeds in two steps." *EEOC v. Sunnybrook Educ. Ass'n*, 712 F.Supp.3d 1093, 1097 (N.D. Ill. 2024) (citations omitted). First, the court determines "which parties (if any) fall within the scope of" Rule 19(a)(1). *Id*. (citing *Askew*, 568 F.3d at 635). If the court identifies such a party, it determines at step two how to proceed. *Id*. If the absent party "is a person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction," the court must order the absent party's joinder under Rule 19(a)(2). *Id*.

Here, Schwindt and SAS are required to be joined under Rule 19(a)(1) because the court cannot accord complete relief to either Mr. Rojas or TRH in the absence of Schwindt and SAS, and because TRH would be subject to a substantial risk of multiple or inconsistent obligations if Schwindt and SAS are not joined. Ultimately, this case turns on whether TRH is vicariously liable for SAS's prerecorded calls. *See, e.g., Warciak v. Subway Restaurants*, 949 F.3d 354, 357 (7th Cir. 2020) ("In order to be held vicariously liable under the TCPA, an agent must have express or apparent authority."); *Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 937–38 (7th Cir. 2016) (applying agency principles to determine whether the defendant was vicariously liable for faxes sent in violation of the TCPA).[1] Without Schwindt and SAS, the extent of their liability and that of TRH cannot be fully litigated and determined.

---

[1] Of course, TRH maintains it is not liable for SAS's prerecorded calls because (i) SAS was not TRH's agent, nor did it purport to be, and (ii) there were no red flags to justify any finding that TRH knew or should have known that any of these leads were bad leads. *See Kristensen v. Credit Payment Services, Inc.*, 879 F.3d 1010, 1014–15 (9th Cir. 2018) ("Under these settled principles, the district court did not err in concluding that [Plaintiff] failed to raise a genuine issue of material

Moreover, TRH cannot implead Schwindt or SAS under Federal Rule of Civil Procedure 14 for contribution or indemnification because, generally, claims for common law indemnification and contribution under similar facts are not recognized by the TCPA or the federal common law. *See Garrett v. Ragle Dental Laboratory, Inc.,* No. 10 C 1315, 2011 WL 2637227 (N.D. Ill. July 6, 2011) (holding that federal, not state, law governs the issue of indemnification or contribution for TCPA claims); *Glen Ellyn Pharmacy, Inc. v. Meda Pharm., Inc.,* No. 09 C 4100, 2011 WL 6156800 (N.D. Ill. Dec. 9, 2011) (holding there is no right to contribution under the TCPA or the federal common law); *see also Desai v. ADT Sec. Systems, Inc.*, 2012 WL 4482012, *2 (N.D. Ill. Sept. 26, 2012) ("ADT cannot state a cause of action for indemnification or contribution under either the TCPA or the common law."). And assuming *arguendo* that TRH could somehow be found vicariously liable in the absence of Schwindt and SAS, and that TRH were to later resort to state law remedies, TRH is at risk of inconsistent judgments in that TRH could lose, for whatever reason, its state law claims against Schwindt and SAS. In other words, TRH could conceivably be left holding the bag for TCPA violations that it did not commit.

Thus, Schwindt and SAS fall within the scope of Rule 19(a)(1) and the analysis proceeds to step two—that is, whether Schwindt and SAS are subject to service of process and whether their joinder will deprive the Court of subject-matter jurisdiction. Given that the alleged calls took place in Illinois, Schwindt and SAS are subject to this Court's personal jurisdiction. Additionally, Schwindt and SAS are readily identifiable and their presence would not destroy this Court's

---

fact as to whether Credit Payment Services, Pioneer Services, Enova, or LeadPile ratified AC Referral's unlawful text messaging. It is undisputed that AC Referral did not enter into a contract with any of the lenders or with LeadPile. It is also undisputed that AC Referral did not communicate with or even know of the lenders or LeadPile before the lawsuit was filed. Because AC Referral was neither an agent nor a purported agent of the lenders or LeadPile, AC Referral's actions do not qualify as ratifiable acts. Accordingly, the lenders and LeadPile cannot be held vicariously liable for AC Referral's unlawful text messages under a ratification theory.").

subject-matter jurisdiction. *See cf. Desai v. ADT Sec. Services, Inc.*, 2011 WL 2837435, *2 (N.D. Ill. July 18, 2011) (denying joinder where it was "'unclear whether joinder [would] be possible' because the identifies of the entities that made the calls 'are not pleaded and not definitively known.'"). Thus, Schwindt and SAS should be joined as necessary parties under Rule 19(a).[2]

## CONCLUSION

Based upon the foregoing, TRH respectfully requests the Court enter an order compelling the joinder of Schwindt and SAS.

DATED: March 5, 2025

Respectfully submitted,

**TAX RELIEF HELPERS, INC.**

By: */s/ Kevin J. Cole*
Kevin J. Cole, Esq. (kevin@kjclawgroup.com)
**KJC LAW GROUP, A.P.C.**
20 N. Clark Street, Suite 3300
Chicago, Illinois 60602
Telephone: (310) 861-7797

*Attorneys for Defendant*
*Tax Relief Helpers, Inc.*

---

[2] The Court need not consider Rule 19(b), which comes into play "[o]nly if the court determines that a party meets the criteria of Rule 19(a)(1)(A) and (B), but the party cannot be joined (usually because joinder would destroy complete diversity or the court lacks personal jurisdiction over it) . . . ." *EEOC v. Sunnybrook Educ. Ass'n*, 712 F.Supp.3d 1093, 1097 (N.D. Ill. 2024).

## **CERTIFICATE OF SERVICE**

I, Kevin J. Cole, an attorney, certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties of record.

By: */s/ Kevin J. Cole*
Kevin J. Cole, Esq. (kevin@kjclawgroup.com)
**KJC LAW GROUP, A.P.C.**